UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BARBARA E. HOPFENSPERGER,

    Plaintiff,

v.                                               Case No. 10-C-0960

SHAWANO COUNTY et al.,

    Defendants.

**DECISION AND ORDER GRANTING DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

Plaintiff Barbara Hopfensperger filed suit on October 26, 2010 against Defendants Shawano County and the Maple Lane Health Care Center (Maple Lane), asserting claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act (ADEA) and Title VII arising out of the termination of her employment with Maple Lane. (Am. Compl. ¶¶ 1, 12.) Hopfensperger was born on June 9, 1956 and was over the age of forty at the time of her termination. At issue presently is the motion for judgment on the pleadings brought by the County. The County contends Hopfensperger's theory — that she was terminated because the County wanted to "rescue a financially troubled nursing home" — fails to state an actionable claim for age discrimination and fails to serve as a basis upon which a retaliation claim may lie. The County alternatively argues it is entitled to summary judgment because Hopfensperger is unable to produce evidence on which a jury could find in her favor on either claim. For the reasons given below, the County's motion for summary judgment will be granted.

**BACKGROUND**

Maple Lane is a nursing facility that provides services for residents who are not able to care for themselves. (Defs.'s Proposed Findings of Fact, DPFF ¶ 4.) Maple Lane was owned and operated by Shawano County until it was sold in April 2012. (*Id.*) As a skilled nursing facility, Maple Lane was required to comply with applicable federal statutes and regulations relating to the care and treatment of residents in order to maintain its Medicare and Medicaid certification. *See* 42 U.S.C. § 1396 et seq., 42 C.F.R. § 483 et seq., Wis. Stat. § 50.09; *see also* DPFF ¶ 5.

Hopfensperger was the Facility Social Worker at Maple Lane. (DPFF ¶ 11.) Hopfensperger was a department head and manager within the facility; she reported to Kathy Schallock as the Nursing Home Administrator. (*Id.* ¶ 12.) As the "Facilities Social Worker", Hopfensperger was legally required to provide medically-related social services to residents to help them attain or maintain the highest practicable physical, mental, and psychological well-being. 42 C.F.R. § 483.15(g); DPFF ¶¶ 13–15.

Richard Mucha was a resident of Maple Lane in November and December of 2008. (DPFF ¶ 1.) Due to a stroke, bilateral amputation of his lower extremities, and diabetes, Mucha was unable to mobilize on his own and required a wheelchair to move around the facility. (*Id.* ¶ 3.)

On December 29, 2008, Schallock was approached at the facility by Mr. Mucha's daughter (Michelle Gall) and wife (Betty Mucha) regarding complaints that they had about the facility's treatment of Mr. Mucha. (*Id.* ¶ 16.) Gall and Ms. Mucha explained Mr. Mucha wanted to leave Maple Lane because of problems Richard experienced with Hopfensperger, the Activity Program Director, Schroeder, and the Activity Program Coordinator, Breitrick. (*Id.* ¶ 18.) Hopfensperger and Schroeder were department heads and considered management within the facility. (*Id.* ¶ 19.)

Breitrick was an employee in the Activities Department who reported to Schroeder and who did not have any managerial responsibilities. (*Id.* ¶ 20.)

The Mucha family informed Schallock the most recent problem arose out of Hopfensperger's and Schroeder's failure to arrange transportation for Mr. Mucha to his great granddaughter's Christmas Eve program, despite the family's request for transportation more than one week prior to the event. (*Id.* ¶ 22.) Maple Lane owned two wheelchair-equipped vans to transport wheelchair bound residents outside of the facility. (*Id.* ¶ 8.) The vans could be and were used for transporting residents to individual activities (such as church, appointments, and family gatherings) and could also be used for group community outings (such as shopping and going to restaurants). (*Id.* ¶ 9.) Hopfensperger and Schroeder had allegedly advised Gall and Ms. Mucha that Maple Lane could not transport Mr. Mucha to the Christmas program and that the family would have to find transportation on their own. (*Id.* ¶ 23.) As a result, Mr. Mucha missed the program. (*Id.* ¶ 17.) He was extremely upset and demanded to be transferred out of Maple Lane. (*Id.* ¶ 24.)

Gall and Ms. Mucha expressed to Schallock several other concerns with the facility, most of which were primarily directed at Hopfensperger and Schroeder but also included one allegation against Breitrick. (*Id.* ¶ 25.) The allegation against Breitrick arose out of an incident in which Breitrick allegedly accused Mr. Mucha of swearing at another resident and purportedly harassed him about his action. (*Id.* ¶ 26.) At Schallock's request, Gall and Ms. Mucha subsequently confirmed their concerns in writing in a letter dated December 29, 2008. (*Id.* ¶ 27.) In addition to the claims about which Ms. Mucha and Gall verbally informed Schallock, the complaint letter asserted that Hopfensperger and Schroeder confronted and harassed Mr. Mucha in his room following a meeting

3

the two women had with Schallock. (*Id.* ¶ 28.) None of the information contained in the allegations was reported to Schallock prior to her discussions with the Mucha family. (*Id.* ¶ 30.)

Schallock determined the statements made by the Mucha family constituted allegations of potential mistreatment, neglect, and abuse of a resident and that Maple Lane was required by the Code to investigate the allegations. (*Id.* ¶ 31.) Accordingly she placed Hopfensperger, Schroeder, and Breitrick on administrative suspension on December 30, 2008 and retained Steven Janikowski (Janikowski), a registered nurse from Pathways Health Services (Pathways), to conduct an investigation into the alleged mistreatment of Mr. Mucha. (*Id.* ¶¶ 32, 34.) Between December 31, 2008 and January 5, 2008, Janikowski interviewed Hopfensperger (represented at the interview by Attorney Aaron Birnbaum), Schroeder, Breitrick, and several other staff from Maple Lane who cared for Mr. Mucha. (*Id.* ¶¶ 36–37.) Janikowski also reviewed several records including Mr. Mucha's medical, activity and social service records, his personal account, the wheelchair van policy, the job descriptions for the Facilities Social Worker, Activity Supervisor and Activity Coordinator and reviewed the services provided by the facility. (*Id.* ¶ 36.) After completing his investigation, Janikowski prepared a report summarizing his findings. (*Id.* ¶ 38.)

Janikowski concluded Hopfensperger was guilty of abusing Mr. Mucha and informed Shawano County of his conclusion. (*Id.* ¶ 39.) Janikowski determined that Hopfensperger intentionally attempted to harm Mr. Mucha because she did not arrange for transportation for him to his great granddaughter's Christmas program and instead attempted to pass responsibility for transportation to the family. (*Id.* ¶ 40.) Janikowski further determined Hopfensperger abused Mr. Mucha by confronting him when she learned of his psychological condition rather than trying to intervene and address his issues. (*Id.* ¶ 41.) Because Hopfensperger was found guilty of abuse,

Shawano County was required, under its abuse policy, to terminate Hopfensperger. (*Id.* ¶¶ 135, 137.) Janikowski similarly concluded Schroeder's actions in dealing with Mr. Mucha caused him psychological harm and constituted abuse. (*Id.* ¶ 43.) Janikowski did not, however, find Breitrick psychologically harmed or abused Mr. Mucha. (*Id.* ¶ 44.)

Following the completion of Janikowski's investigation, the County's Administrative Coordinator, Frank Pascarella, terminated Hopfensperger's employment. (*Id.* ¶ 67.) Pascarella determined termination was warranted because Hopfensperger failed to meet Mr. Mucha's psychological needs, did not provide Mr. Mucha with the services he required, and caused him psychological harm. (*Id.* ¶ 68.) He determined Hopfensperger failed to perform her required job duties as Facilities Social Worker. (*Id.* ¶ 68.) Pascarella also terminated Schroeder following the investigation. (*Id.* ¶ 72.) Breitrick was not terminated because she was not found to have abused Mr. Mucha. (*Id.* ¶ 73.) Moreover, the allegations against Breitrick arose out of an incident which occurred four to five years earlier and the evidence indicated Breitrick properly handled the incident with Mr. Mucha by reporting it to her supervisor. (*Id.* ¶ 74.)

Hopfensperger's counsel appealed Pascarella's decision to terminate her to the County's Administrative Committee pursuant to a procedure in the County's policy manual which allows the Committee to review, and if appropriate, reverse a termination decision. (*Id.* ¶ 76.) On April 29, 2009, the Committee concluded an evidentiary hearing at which Pascarella, Schallock, and Janikowski testified regarding the termination. (*Id.* ¶ 77.) Hopfensperger was represented at the hearing by counsel, Aaron Birnbaum and James Birnbaum, who were present at all times during the evidentiary portion of the meeting. (*Id.* ¶ 78.) Counsel was allowed to question witnesses and to present evidence and argument in support of Hopfensperger's appeal of the termination. (*Id.* ¶ 79.)

5

Following the close of the case, the Administrative Committee deliberated in a closed session. (*Id.* ¶ 80.) The Committee's deliberations related solely to the evidence presented surrounding the investigative findings of patient mistreatment and abuse by Hopfensperger and the resulting psychological harm to Mr. Mucha and evidence of Hopfensperger's failure to perform in accordance with her job requirements. (*Id.* ¶ 82.) Following deliberations, the Committee reconvened in an open session and voted to sustain Hopfensperger's termination. (*Id.* ¶ 83.) Plaintiff was initially replaced by Kristin Meyer, who was 38 years old and was paid at the same rate as Plaintiff (who had worked for Shawano County for 25 years). (*Id.* ¶ 86.) Plaintiff says she was ultimately replaced by Michael Leichey who was 41 years old, eleven years younger than Plaintiff, and expected to perform the same job functions. (*Id.* ¶ 87.)

**LEGAL STANDARDS**

Defendant has moved for both judgment on the pleadings and summary judgment. Each is governed by different rules. Under Rule 12(c) of the Federal Rules of Civil Procedure, a party may move for judgment after the parties have filed the complaint and answer. Judgment on the pleadings is only proper where the moving party has clearly established that there are no unresolved material issues of fact and he or she is entitled to judgment as a matter of law. *Nat'l Fidelity Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir.1987). In deciding a motion for judgment on the pleadings, the court "must view the facts in the light most favorable to the nonmoving party," but "is not bound by the nonmoving party's legal characterizations of the facts." *Id.* Generally, the court may consider only matters presented in the pleadings," *id.*, which "include the complaint, the

answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

Under Rule 56(c), "summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* Once the moving party has demonstrated the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show that there is a genuine dispute as to the material facts of the case. *Id.* at 323–24. The responding party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e)(2).

The ADEA prohibits an employer from "discharg[ing] any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1) (2003). To establish a claim under the ADEA, a plaintiff-employee must show that "the protected trait (under the ADEA, age) actually motivated the employer's decision"— that is, the employee's protected trait must have "actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993)). Such a claim may be proven through direct evidence of the

7

employer's discriminatory motive, or through the indirect, burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Direct evidence usually requires an admission by the decisionmaker that his actions were based on age. *Balderston v. Fairbanks Morse Engine Div. Of Coltec Indus.*, 328 F.3d 309, 321 (7th Cir. 2003). When a plaintiff chooses to proceed under the direct method, she must present evidence of discriminatory animus, i.e., a "smoking gun," or circumstantial evidence which establishes discriminatory motive through a longer chain of inferences. *Van Antwerp v. City of Peoria*, 627 F.3d 295, 297 (7th Cir. 2010).

To prove a claim under the indirect method, a plaintiff must demonstrate that she (1) was over 40 years old; (2) was meeting her legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than younger, similarly situated employees. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004). If the plaintiff succeeds in establishing a *prima facie* case, this creates a rebuttable presumption of discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's discharge. *Little v. Ill. Dep't of Rev.*, 369 F.3d 1007, 1011 (7th Cir. 2004). Once an employer articulates a legitimate, nondiscriminatory rationale for termination, the burden shifts back to the plaintiff to demonstrate the proffered reason is merely pretextual. *Id.* It is not enough for a plaintiff to focus on just one of these elements; at a minimum he must demonstrate a triable issue as to each element in order to survive summary judgment. *See O'Neal v. City of New Albany*, 293 F.3d 998, 1003 (7th Cir. 2002). "[T]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Testerman v. EDS Tech. Prods. Corp.*,

98 F.3d 297, 303 (7th Cir. 1996) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

**ANALYSIS**

A. JUDGMENT ON THE PLEADINGS

The County's motion for judgment on the pleadings focuses on a single allegation of Hopfensperger's complaint: "Upon information and belief, Defendants were attempting to terminate the employment of its older and higher-paid employees and continuing to employ in order to reduce costs for a financially burdened nursing home." (Am. Compl., ECF 8, ¶ 16.) The County argues that Hopfensperger's allegation that it terminated her employment as part of a plot to save money by getting rid of older and higher-paid employees, even if true, is not actionable under the ADEA as a matter of law.

In support of its argument, the County notes that in *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611 (1993), the Supreme Court held that it was not age discrimination for an employer to fire a 62-year-old employee in order to prevent the employee's pension benefits from vesting. Consistent with *Hazen Paper Co.*, the Seventh Circuit held in *Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125-26 (7th Cir. 1994), that firing employee solely to reduce salary costs is not age discrimination. Applying that principle here, the County argues that because the Amended Complaint alleges that its motivation in terminating Hopfensperger's employment was to save money, it fails to state a claim under the ADEA.

The problem with the County's argument is that it has denied this very allegation in its Answer to Hopfensperger's Amended Complaint. (Answer, ECF 9, ¶ 16.) Thus, the County has in its own pleading placed the very fact which it claims entitles it to judgment on the pleadings in

9

dispute. It is clear from its brief that what the County actually seeks is dismissal of Hopfensperger's ADEA claim for failure to state a claim under Rule 12(b)(6). In essence, the County's argument is that by alleging that the County's motivation was to cut costs, Hopfensperger has plead herself out of court. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (noting that plaintiff can "plead himself out of court by pleading facts that show that he has no legal claim").

Even viewed as a Rule 12(b)(6) motion, the County's challenge to the Amended Complaint fails. Viewed in its totality, the Amended Complaint is sufficient to state an ADEA claim against the County. Hopfensperger alleged that at the time she was terminated she was 52 years old, she was replaced by someone under the age of 40, similarly situated employees under the age of 40 who were accused of abuse by patients or their families were not terminated, and that the County's actions were in violation of the ADEA. These allegations are sufficient to state a claim under the ADEA. Hopfensperger's assertion that the County's actions were motivated by a desire to cut costs adds confusion to her claim but it does not show that she has no claim under the ADEA. Accordingly, the County's motion for judgment on the pleadings is denied.

## B. Summary Judgment

Alternatively, the County claims it is entitled to summary judgment on both of Hopfensperger's claims because she is unable to produce any evidence from which a jury, acting reasonably, could find in her favor. I will address her ADEA claim first.

### 1. ADEA CLAIM

Lacking any direct evidence of age animus on the County's part, Hopfensperger here relies on the indirect method to demonstrate age discrimination in violation of the ADEA. The first and third elements of her ADEA claim are not in dispute: Hopfensperger was over forty years old at the time

10

and she undeniably suffered an adverse employment action, as she was terminated. The dispute centers on the second and fourth elements.

### a. LEGITIMATE JOB EXPECTATIONS

In order for Plaintiff's claim to survive under the second element, she must demonstrate evidence exists that indicates she was performing her job according to the County's legitimate job expectations at the time of her discharge. *Moser v. Ind. Dept. of Corrections*, 406 F.3d 895, 901 (7th Cir. 2005); *Griffin*, 356 F.3d at 828; *see also Kodl v. Bd. of Ed. Sch. Dist.*, 490 F.3d 558, 562 (7th Cir. 2007). The inquiry requires the court to look at Hopfensperger's job performance through the eyes of her supervisors at the time of her termination. *See Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008); *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002); *Fortier v. Ameritech Mobile Communications Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998).

Plaintiff argues she was, in fact, meeting her legitimate job expectations (and thus that she meets the second factor of the indirect method requirements.) But the fact that "throughout her career with Maple Lane" she "received positive performance appraisals" and "received stellar annual performance reviews" has no bearing on whether or not she was guilty of abuse of Mr. Mucha or whether, in the face of the results of the independent investigation, there was good cause to terminate her. (ECF No. 22 at 2; ECF No. 26 ¶ 5.) Previous positive performance evaluations are insufficient to demonstrate the adequacy of performance when an employment action is taken; they cannot, standing alone, create a genuine issue of material fact on summary judgment. *Naik v. Boehringer Ingelheim Pharm., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010); *Moser*, 406 F.3d at 901; *Fortier*, 161 F.3d at 1113. Furthermore, an employee's conclusory (and self-serving) statements regarding her own performance are insufficient to contradict the employer's negative assessment of that performance and do not create an issue of material fact on summary judgment. *Mills v. First*

*Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 842–43 (7th Cir. 1996). In other words, the fact that Plaintiff had an (allegedly) positive employment history fails to demonstrate she was meeting the County's legitimate job expectations at the time of her discharge.

This is especially true in cases such as this one, where a very specific incident occurred, altering the employer's view of the employee. Hopfensperger admits she was found guilty of causing psychological harm and abusing Mr. Mucha. As Defendants note, "the issuance of the IJ and the other citations issued as a result of the State survey directly implicated Hopfensperger's failure to fulfill her duties as a Facilities Social Worker." (ECF No. 12 at 22.) As such, even if Hopfensperger could demonstrate a prima facie case of age discrimination under the indirect method, she cannot produce evidence sufficient to create a genuine issue of material fact that the County's stated reasons for her termination were pretextual, as the County's initial decision to terminate Hopfensperger was subsequently upheld on appeal. The Administrative Committee held an evidentiary hearing at which Hopfensperger was represented by counsel, was given the opportunity to examine witnesses, and presented her own case. Thus, even taking the facts alleged by Hopfensperger in a light most favorable to her, I cannot say she has raised a genuine issue of material fact as to the true reason for her termination.

Admittedly, from the facts before me, it seems strange to view a refusal to give a ride (and the resulting confrontation) as so invidious as to constitute psychological harm or abuse. But this Court's role is not to determine whether the County had, for example, good cause to terminate Hopfensperger; instead it is the Court's duty to determine whether or not Plaintiff has set forth any evidence of age discrimination. In this instance, an independent investigator (Janikowski) concluded Hopfensperger "abused" Mr. Mucha, at least as he understood the governing regulations. There is no evidence or even suggestion of collusion on the part of Janikowski and the County, and

nothing from his investigation or the facts before me suggest this termination had anything to do with age. Accordingly, while Hopfensperger may have a point that this termination is odd or perhaps even unduly harsh, that does not mean that it was motivated by consideration of her age.

### b. YOUNGER, SIMILARLY SITUATED EMPLOYEES

Plaintiff's case is also deficient on the fourth element of the indirect method. To succeed on her claim, Plaintiff must point to some evidence that demonstrates she was treated less favorably than younger, similarly situated employees outside of her protected class. *Martino v. MCI Comm. Servs., Inc.*, 574 F.3d 447, 453 (7th Cir. 2009). But Plaintiff points to no evidence to suggest she was treated less favorably than younger employees, nor does she propose any such similarly situated employees. Plaintiff instead suggests County's disparate treatment was an attempt "to terminate the employment of its older and higher-paid employees and continuing to employ [*sic*] in order to reduce costs for a financially burdened nursing home." (Am. Compl. ¶ 16.) Hopfensperger thus indicates she believes the County treated her differently than younger employees in an effort to save money. As already noted, however, such motivation is not actionable under the ADEA. *See, e.g., Anderson v. Baxter Healthcare Corp.*, 13 F.3d 1120, 1125 (7th Cir. 1994) (holding that an employer's action to reduce salary costs is not an actionable claim under the ADEA). Additionally, Plaintiff's own theory seems to fail. Plaintiff was initially replaced by Kristin Meyer, who was 38 years old and paid at the same rate as Plaintiff. (DPFF ¶ 86.) Plaintiff believes she was ultimately replaced by Michael Leichey who was 41 years old and expected to perform the same job functions. (DPFF ¶ 87.) These replacements further suggest Hopfensperger was not terminated on the basis of age (as her ultimate replacement was over 40) or for financial reasons (her interim replacement made the same amount.) Rather, Plaintiff was terminated on the basis of her performance, as discussed above.

Likewise, Plaintiff fails to demonstrate she was treated less favorably than any similarly situated employees. A showing of substantial similarity entails that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. *Antonetti v. Abbott Laboratories*, 563 F.2d 587, 592 (7th Cir. 2009); *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Courts look for "comparators, not 'clone[s]'." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citing *Chaney v. Plainfield Healthcare Center*, 612 F.3d 908, 916 (7th Cir. 2010)). Precise equivalence between employees is not the ultimate goal; rather, the touchstone of the similarly-situated inquiry is whether the employees are "comparable." *McDonald v. Sante Fe Trail Transportation Co.*, 427 U.S. 273, 283 (1976). Hopfensperger attempts to suggest Breitrick is such a similarly situated employee. Hopfensperger concedes Breitrick was not a department head by title, but nevertheless contends Breitrick charged at times with the duties and responsibilities of a department head. Nonetheless, the independent investigation did not find any act by Breitrick psychologically harmed Mr. Mucha or that Breitrick abused him. Additionally, as discussed above, the real allegations against Breitrick arose out of an incident from four to five years prior and Breitrick had properly handled the incident by reporting it to her supervisor. Given these facts, I conclude Breitrick is not a comparable employee. Plaintiff thus cannot succeed on the fourth element. Hopfensperger has pointed to no younger, similarly situated employee to raise a genuine issue of material fact under the indirect method of discerning age discrimination. Defendant's motion for summary judgment is thus granted under this ground as well.

## 2. RETALIATION

Plaintiff also claims the County retaliated against her after she expressed her opposition to what she perceived as age discrimination. She bases her claim on the fact she was terminated after she retained counsel and sent a letter to the County complaining of the investigation and her suspension. (Am. Compl. ¶¶ 17–18.) She claims that Breitrick, who did not retain counsel or send a letter, was not terminated. (*Id.*)

Retaliation may be proved through direct and indirect evidence. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). To satisfy the direct method of a retaliation claim, the plaintiff must present direct evidence that: (1) she engaged in a statutorily protected activity; (2) an adverse action was taken by her employer; and (3) there was a causal connection between the activity and the adverse action. *Id.* The indirect method utilizes a modification of the *McDonnell Douglas* factors and does not require a showing of causation. Under the indirect method, a plaintiff must show she (1) engaged in statutorily protected activity, (2) met the employer's legitimate expectations, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006); *see also Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 673 (7th Cir. 2011). If the plaintiff is able to successfully establish these elements, the defendant then has the burden to come forward with a legitimate, non-discriminatory reason for the adverse action. *Id.* If the defendant is able to do so, the burden shifts back to the plaintiff to show that the defendant's reason is pretextual. *Id.*

Regardless of which method a plaintiff uses to show retaliation, she must first demonstrate that she engaged in protected activity under the ADEA. *O'Leary*, 657 F.3d at 631. Hopfensperger must show that she took some step in opposition to a form of discrimination the ADEA prohibits.

15

*Id.* Hopfensperger need not show that the practice she opposed was a violation of the ADEA; she may be mistaken and still claim protection. *Id.* However, her opposition must be based on a good faith and reasonable belief that she is opposing unlawful conduct. *Id.* If she does not honesty believe that she is opposing a practice prohibited by the statute, or if her belief is unreasonable, her opposition is not protected. *Id.* at 631.

The conduct Hopfensperger complained about in her December 31, 2008 letter to the County — that the County was focusing on "older, long term" employees "in a desire to rescue a financially-troubled nursing home" — was neither unlawful nor actionable under the ADEA. (ECF No. 22 at 14.) It is not a violation of the ADEA to terminate an older employee because the employee was about to vest in his pension because a termination based on financial considerations was not the product of the impermissible stereotypes the ADEA was designed to prevent. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). The Seventh Circuit followed in 1994 in Anderson holding that a termination of an older employee which was undertaken to save money was not actionable under the ADEA. *Anderson*, 13 F.3d at 1125. In light of this precedent, the claim Hopfensperger makes in her 2008 letter is not for conduct that is unlawful or actionable under the ADEA.

Hopfensperger nonetheless argues her claim for retaliation based on the opposition set forth in her December 31, 2008 letter should survive because "all that is required is that she *reasonably* believed in good faith that the practice she opposed violated Title VII."(*sic*) (emphasis added) (ECF No. 22 at 17–18.) A reasonable belief, however, is an objective, not a subjective test. Here, Hopfensperger has not offered any evidence that her belief — that she was opposing age discrimination in the workplace in her December 31, 2008 letter — was objectively reasonable. She makes no assertions that any action taken by the County was the result of an inappropriate

16

stereotype related to age, such as that workers over 40 are less productive, more rigid, or slower to learn than younger employees. *See Hazen Paper Co.*, 507 U.S. at 611 ("It is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age"). Her claim for retaliation must therefore be dismissed.

Furthermore, even assuming, *arguendo*, Hopfensperger could establish that her belief was objectively reasonable, her claim for retaliation would still fail. As discussed above, Hopfensperger has failed to establish that Breitrick was a similarly situated employee. Breitrick is not a comparable employee as she was not a department head and did not act or have the responsibilities of a manager at the facility. Additionally, the facts and circumstances surrounding the claims against Breitrick are factually distinct from Hopfensperger. First, the sole allegation from the Mucha family about Breitrick was that she inappropriately admonished Richard in an incident occurring four to five years earlier. Second, the Janikowski investigation did not find that any act by Breitrick psychologically harmed or abused Mr. Mucha. To the contrary, the evidence established that, unlike Hopfensperger, who confronted Mr. Mucha about the incident and tried to persuade him otherwise, Breitrick did not confront him about it and instead simply reported it to Schroeder in accordance with Maple Lane policy. Finally, while there is a reference in Janikowski's findings to a hearsay statement that Breitrick was made aware of Richard's transportation request on Christmas Eve, Janikowski gave the statement no credence and made no finding that Breitrick breached any duty or obligation to transport Mr. Mucha. Janikowski found that the request for transportation was made to Hopfensperger and Schroeder and that they failed to accommodate the request and, instead, inappropriately placed the burden on the family to arrange transportation. For these reasons, Breitrick is not a similarly situated employee who did not oppose discrimination and

was treated differently. Hopfensperger points to no such employee other than Breitrick; as Breitrick does not meet this requirement, Hopfensperger's argument cannot stand.

Finally, Hopfensperger has not offered any evidence that the County's stated reasons for termination on the retaliation claim are pretextual. Hopfensperger cites to no additional evidence in her deposition testimony or interrogatory responses in support of her retaliation claim which suggests that the County did not honestly believe the nondiscriminatory reasons it offered for plaintiff's termination. Hopfensperger's claim for retaliation is therefore dismissed on several grounds.

## CONCLUSION

In sum, Defendant has demonstrated no genuine issue of material fact remains with respect to Plaintiff's termination. Particularly, Plaintiff has introduced no meaningful evidence to suggest she was performing her legitimate job expectations; she was found guilty of abuse by both an investigator and a subsequent appeal through an administrative hearing. Additionally, Plaintiff has pointed to no material evidence that she was treated differently than similarly situated, younger employees. Finally, Plaintiff's claim for retaliation fails for similar reasons. Defendant's motion for summary judgment (ECF No. 11) is accordingly GRANTED. The Clerk is directed to enter judgment in favor of the Defendant County dismissing the action with prejudice.

**SO ORDERED** this __30th__ day of March, 2012.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge